UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

JANET WHITTIER,

        Plaintiff,

  v.

KAISER FOUNDATION HOSPITALS,

        Defendant.

NO. CIV. S-06-2693 FCD GGH

MEMORANDUM AND ORDER

----oo0oo----

    This matter is before the court on defendant Kaiser Foundation Hospital's ("defendant") motion to dismiss plaintiff Janet Whittier's ("plaintiff") complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendant asserts plaintiff's sole claim for wrongful termination in violation of public policy, brought under state law, is preempted by Section 301 of the Labor Management Relations Act of 1947 ("LMRA") and subject to Section 301's six-month statute of limitations.  29 U.S.C. § 141 et seq.  As plaintiff filed suit more than six months after her LMRA claim accrued, defendant requests that plaintiff's

complaint be dismissed with prejudice.  Plaintiff opposes the motion, arguing that she plead a state law cause of action that is not preempted by the LMRA, and requests leave to amend her complaint, if necessary, to clarify her state law claim.[1]

**BACKGROUND**

Plaintiff was employed by defendant as a registered nurse from August 2000 until October 24, 2005.  (Pl.'s Compl., filed October 23, 2006, removed November 27, 2006, at ¶5, ¶14.)  The terms and conditions of plaintiff's employment were governed by a collective bargaining agreement ("CBA") entered into between the California Nurses Association and defendant.  (Pl.'s Compl . at ¶8; Second Amended Decl. of Debra Golden, filed December 4, 2006, Exhibit A.)

In 2004, defendant merged plaintiff's nurses' station with another station, causing overstaffing at the new merged station. (Pl.'s Compl. at ¶6.)  As a result, the station manager began sending some nurses to other assignments within the hospital. (Id.)  These "floating" assignments were made on the basis of seniority, whereby less senior nurses were regularly sent to other stations.  Plaintiff complained of the seniority-based float policy to the station manager and to a union representative.  (Id.)  In January 2005, plaintiff refused an assignment to another section of the hospital, citing her concerns that the rotation was not within her area of expertise. (Id. at ¶8.)  Plaintiff alleges she refused the assignment

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

2

1  pursuant to her rights under the CBA.  (Id.)  In March of 2005,
2  plaintiff was disciplined for her refusal of the assignment and
3  for poor documentation of pain management of a patient.  (Id. at
4  ¶12).  Plaintiff decided not to file a grievance regarding her
5  discipline and instead sought a transfer to another section of
6  the hospital.  (Id.)

7  In October 2005, plaintiff left her station unattended so
8  she could escort a patient to an appointment.  (Id. at ¶13.)
9  When plaintiff returned to her station she was immediately placed
10 on administrative leave and was terminated approximately one week
11 later, on or about October 24, 2005.  (Id. at ¶14.)

12 Plaintiff commenced this action on October 23, 2006, in the
13 Sacramento County Superior Court.  Plaintiff's complaint alleges
14 one count of wrongful termination in violation of public policy.
15 Defendant removed the case to this court on November 27, 2006,
16 contending that plaintiff's state law claim was preempted by
17 Section 301 of the LMRA and otherwise barred by the LMRA's
18 statute of limitations.  Defendant now moves to dismiss
19 plaintiff's action against it.

## STANDARD

21 On a motion to dismiss, the allegations of the complaint
22 must be accepted as true.  Cruz v. Beto, 405 U.S. 319, 322
23 (1972).  The court is bound to give plaintiff the benefit of
24 every reasonable inference to be drawn from the "well-pleaded"
25 allegations of the complaint.  Retail Clerks Int'l Ass'n v.
26 Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff
27 need not necessarily plead a particular fact if that fact is a
28 reasonable inference from facts properly alleged.  See id.

Given that the complaint is construed favorably to the pleader, the court may not dismiss the complaint for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. Conley v. Gibson, 355 U.S. 41, 45 (1957); NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

Nevertheless, it is inappropriate to assume that plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters, 459 U.S. 519, 526 (1983). Moreover, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. See Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988). The court may also consider documents not physically attached to the complaint, but whose contents are alleged in the complaint, and whose authenticity is not questioned by either party. See Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994) (overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002)).[2]

---

[2] Plaintiff concedes that the terms of her employment were governed by the CBA. (Pl.'s Comp. at ¶8.) Thus, the court may consider the CBA, submitted as an exhibit to defendant's motion to dismiss, without converting the instant motion in to

**ANALYSIS**

**A.    LMRA Preemption - Controlling Law**

Removal to federal court is proper where "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 392-394 (1984) (citing <u>Metropolitan Life Insurance Co. v. Taylor</u>, 481 U.S. 58, 65 (1987)).  Once an area of state law has been completely preempted, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law.  <u>Caterpillar</u>, 482 U.S. at 392-394.  Accordingly, removal jurisdiction is proper when the plaintiff's complaint casts in state law terms a claim that can be made only under federal law.  <u>Id.</u>

Section 301 of the LMRA provides in pertinent part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court in the United States having jurisdiction of the parties without respect to the amount in controversy or without regard to the citizenship of the parties.

Shortly after the LMRA's passage, the Supreme Court ruled that Section 301 authorized the federal courts to develop federal common law to govern CBA disputes and that this federal common law preempts the use of state contract law in cases of CBA interpretation and enforcement.  <u>Cramer v. Consolidated Freightways, Inc.</u>, 255 F.3d 683 (9th Cir. 2001).  "[T]he pre-emptive force of § 301 is so powerful as to displace entirely any

---

one for summary judgment.

5

state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." <u>Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal.</u>, 463 U.S. 1, 23 (1983).

In <u>Livadas v. Bradshaw</u>, 512 U.S. 107, 122-23 (1994), the Supreme Court described the principles underlying Section 301 preemption of state law claims when it stated:

> [T]he pre-emption rule has been applied only to assure that the purposes animating § 301 will be frustrated neither by state laws purporting to determine 'questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement,' nor by parties' efforts to renege on their arbitration promises by 'relabeling' as tort suits actions simply alleging breaches of duties assumed in the collective bargaining agreements.

Specifically, the LMRA preempts state law claims where the claim requires the court to interpret the applicable CBA. <u>Cramer</u>, 255 F.3d at 691. Section 301 also preempts state law claims that are "inextricably intertwined" with consideration of the terms of the CBA. <u>Allis-Chalmers Corporation v. Lueck</u>, 471 U.S. 202, 213 (1985). To the contrary, the LMRA generally does not preempt state law claims that do not require interpretation of the CBA and that are based upon non-negotiable state law rights independent of rights under the CBA. <u>Cramer</u>, 255 F.3d at 690-91 (citing <u>Livadas</u>, 512 U.S. at 122-24). "A state law claim is not preempted under § 301 unless it necessarily requires the court to interpret an existing provision of a CBA that can reasonably be said to be relevant to the resolution of the dispute." <u>Id.</u> at 693.

In determining whether a state law cause of action is preempted by Section 301, "it is a claim's legal character, as independent of rights under the collective-bargaining agreement, that decides whether a state cause of action may go forward . . . ." Livadas, 512 U.S. at 123-24. In the particular context of claims for wrongful termination in violation of public policy, courts in this circuit have found that such claims based upon state rights independent of any CBA, such as those created by a state statute prohibiting employment discrimination or ensuring workplace safety, are not preempted by the LMRA. See, e.g., Cramer, 255 F.3d 683 (alleging retaliation for complaints regarding invasion of privacy); Ramirez v. Fox Television Station, Inc., 998 F.2d 743 (9th Cir. 1993) (alleging retaliation for complaints regarding national origin discrimination in violation of the California Fair Employment and Housing Act); Paige v. Henry J. Kaiser Company 826 F.2d 857 (9th Cir. 1987) (alleging retaliation for refusal to work under unsafe conditions); Garibaldi v. Lucky Food Stores, 726 F.2d 1367 (9th Cir. 1983) (alleging retaliation for reporting violations of food safety standards). In contrast, where there is no underlying independent state public policy being asserted, the claim is then, in essence, a claim for wrongful termination contrary to the CBA. See, e.g., Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993 (9th Cir. 1987) (no identifiable public policy to support wrongful termination claim stemming from employees' statements regarding a tax audit); Hollinquest v. St. Francis Medical Center, 872 F. Supp. 723 (C.D. Cal. 1994) (nurse's complaints regarding patient care did not implicate any public

7

policy that would support a claim for wrongful termination in violation of public policy). Such a claim thus hinges upon the interpretation of the CBA and is preempted by the LMRA. Id.

### B. **Plaintiff's Claim for Wrongful Termination in Violation of Public Policy**

Plaintiff's complaint alleges one count of wrongful termination in violation of public policy. Specifically, plaintiff alleges defendant breached, repudiated, and wrongfully terminated plaintiff without good, just, or legitimate cause and that defendant's basis for termination was arbitrary, unjust, and made in bad faith. (Pl.'s Comp. at ¶17.) Additionally, plaintiff alleges her termination was "in violation of express statutes and public policies," including the public policy that employees should not be terminated because they voice complaints regarding patient care. (Pl.'s Comp. at ¶18.)

Plaintiff asserts she was terminated in retaliation for refusing to accept an assignment to another section of the hospital and for her complaints regarding the hospital's floating policy. Plaintiff alleges her complaints and eventual refusal of the assignment were based on her concerns that the float policy created a patient care problem and that the assignment was not in an area of her expertise. Plaintiff asserts she refused the assignment "pursuant to her rights under her union contract." (Pl.'s Comp. at ¶8.)

Plaintiff's complaint does not identify any express statutes or public policy to support a claim for wrongful termination in violation of public policy, which would not fall within the LMRA. In contrast to the non-preempted claims of wrongful termination

8

in violation of public policy cited above (Cramer, Ramirez, Paige, and Garibaldi), which involved violations of statutes or constitutional provisions protecting employees from discrimination, unsafe workplaces, and privacy intrusions, plaintiff's claim is not grounded in an express statute or constitutional provision.  In other words, plaintiff has not alleged a "nonnegotiable state law right," as discussed in Cramer, which is "independent" of the terms of the CBA, thus giving rise to a cause of action for wrongful termination in violation of public policy which is not preempted by the LMRA. Instead, plaintiff identifies only a vague concept of a public policy which protects employees who voice concerns regarding patient care.  While such a policy may be desirable, it is distinguishable from the public policies asserted in the non-preempted wrongful termination cases, in that it is not protected *outside* of the CBA context.

The essence of plaintiff's complaint lies in her assertions that the CBA afforded her the right to refuse the patient assignment and that her termination was "without good, just, or legitimate cause."  (Pl.'s Comp. at ¶8, ¶17).  What constitutes good cause and the process by which nurses were to handle patient care concerns were terms of employment covered by the CBA. (Golden Decl., Ex. A.)  At its core, plaintiff's cause of action is not for wrongful termination in violation of public policy, but for wrongful termination in *violation of the terms of the CBA*.  As such, plaintiff has failed to state a claim based on an independent state law right, and to the extent her complaint asserts a claim based on violations of the CBA, her claim is

preempted by Section 301 of the LMRA.

    **C.**    **Statute of Limitations for LMRA Claims**

State law claims preempted by Section 301 are effectively recharacterized as claims brought under the LMRA. Young, 830 F.2d at 998-99. Actions under the LMRA for breach of a CBA are subject to a six-month statute of limitations. DelCostello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 154 (1983).

Plaintiff's claim accrued on the date of her termination, which was October 24, 2004. Plaintiff did not file her complaint in state court until October 23, 2005, nearly one year after her termination and well past the six-month statute of limitations period. Accordingly, the violations alleged in plaintiff's complaint are time-barred.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is GRANTED. Plaintiff's request for leave to amend is DENIED.[3] Plaintiff's complaint is dismissed with prejudice. The Clerk of the Court is directed to close this file.

IT IS SO ORDERED.

DATED: March 12, 2007

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

---

[3] Granting plaintiff leave to amend would be futile. Though plaintiff raises, for the first time in her opposition, specific statutes and regulations related to nursing practices which she contends establish the requisite "independent" state law rights, the court finds that such provisions are distinguishable from those cited in cases such as Cramer, Ramirez, Paige, and Garibaldi, and would not provide a basis for a *non-preempted* wrongful termination claim. See Hollinquest v. St. Francis Medical Center, 872 F. Supp. 723 (C.D. Cal. 1994).